UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES L. CORDELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:14cv109 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since December 26,

2

        2008, the alleged onset date (20CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hydradenitis suppurative, major depressive disorder, spinal arthritis, left ankle pain, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant is able to sit, stand, or walk eight hours each in an eight-hour workday; is able to perform simple and repetitive tasks akin to unskilled work; and cannot perform fast-paced work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born August 15, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 26, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 13-22).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on October 25, 2014. On December 18, 2014, the defendant filed a memorandum in support of the Commissioner's decision, and on January 29, 2015, Plaintiff filed his reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

The medical record is as follows. On September 15, 2008, a medical clinic found that Plaintiff had an abscess/cyst in both arm pits. He had a few seeping cysts on the right side. (R. 272) On October 31, 2008, Dr. Clark, Plaintiff's primary care physician, found he had a draining

4

cyst in the right abdominal area and had draining cysts in the right axilla (armpit). He also had a cyst on his waist and in his groin. (R. 271) On November 21, 2008 Dr. Clark found Plaintiff had a cyst in his right upper quadrant. (R. 270)

On March 28, 2010, Dr. Clark's examination found Plaintiff had cysts draining under both arms, on his back and his groin. (R. 269) On August 31, 2010, Dr. Clark determined Plaintiff had chronic cysts. (R. 268) On February 16, 2011, Dr. Clark found Plaintiff had cysts in both axillae and in his inner groin. (R. 333)

On February 23, 1011, Plaintiff received a medical evaluation for Social Security from Dr. Gatewood (R. 283-287) She reported that Plaintiff had cysts under his right and left arms, under his groin, between his buttocks, and under the waist line. The cysts were seeping fluid. They caused him to have chronic pain and discomfort. Dr. Gatewood reported that Plaintiff presented with back arthritis, hidradenitis suppurativa and chronic left ankle pain.  The hidradenitis suppurativa was chronic and recurrent with tactile fevers. The currently active areas were in both axillae (armpits). The area on the right had been present for the past two months. It had recently swelled to the size of a grapefruit. It spontaneously opened on its own 19 days ago and drained a large amount of blood and pus. It continued to drain small amounts of fluid since then. Plaintiff also opened a nodule on his own in the groin that drained old blood and curdled pus. Plaintiff had taken Keflex for the past 19 years. He had multiple incision and drainage procedures done but they always recurred. A surgeon had removed the cysts on his back. He had also had surgery on his left thigh to remove a cyst.

Plaintiff was 75 inches tall and weighed 343 pounds. Physical examination determined that in his bilateral axillae he had multiple, erythematous (red), hard nodules. One of the nodules

5

in the right axillae was actively draining yellow pus. Along the superior buttocks, there were multiple blackheads and well-healed sinus tracks. Dr. Gatewood concluded that Plaintiff had chronic recurrent hidradenitis suppurativa.

On August 9, 2011, Dr. Clark's examination determined Plaintiff had axillary lesions. (R. 332) On February 3, 2012, Dr. Clark determined Plaintiff had multiple lesions. (R. 331) On February 15, 2012, Dr. Clark's quite detailed examination determined Plaintiff had hydradenitis suppurativa. (R. 334-338) Plaintiff had lesions on his back which had been there for at least 3 months. These caused the functional loss of restricting his bending, stretching and reaching because that would cause the lesions to open. Plaintiff had lesions on both of his axillae which had been there for at least 3 months. Plaintiff also had lesions on both of his buttocks which had been there for at least 3 months. These limited him functionally because they would erupt with bending. Plaintiff had lesions in his Perineal Inguinal/Anogenital areas which had been there for at least 3 months. They limited him functionally because they would open and seep sero sanguinal fluid. Dr. Clark had last examined Plaintiff on February 3, 2012. Plaintiff was treated with Keflex and Vicodin. The lesions were responsive to treatment and Plaintiff was compliant with treatment. However, Plaintiff's lesions never totally healed.

On July 19, 2012, Plaintiff's primary care physician's office found that he had skin lesions under his waistband, on his back and on both legs. (R. 340) Plaintiff testified that he used a cane occasionally. He would use it once a day when he went to check his mail. He had been using it for 3 years. (R. 33)

Plaintiff had gone to the 8th grade. (R. 34) He drove his car about once a month. He drove less than a mile. (R. 35) Plaintiff had not worked since December 26, 2008. He had collected

6

unemployment compensation during that time. (R. 36) His family helped to support him. Plaintiff had last worked as a baker's assistant in a pet food factory. (R. 38) He baked dog biscuits. His employer fired him because he said his pain pills interfered with his judgment. He also had blood and fluid coming out of his skin lesions. The fluid caused the employer to have to shut the machinery down and clean it. (R. 39) Plaintiff was currently receiving medical treatment for his skin lesions and for his high blood pressure. He also had problems with his feet. He had swelling in his feet, ankles and calves. Plaintiff took Hydrocodone, Soma and Keflex.(R.40-41) His treating physician, Dr. Clark, prescribed his medications. She had been treating him since 1989. (R. 41)

Plaintiff could stand for only 5 to 10 minutes. He could walk for about 15 feet before his back would spasm. He could sit for about 20 minutes. His lifting was limited to 5 pounds. (R. 42) It would be difficult for him to pick up coins from a table due to problems with his hands. He had broken his right hand. (R. 43) Plaintiff dropped cups of coffee.

Plaintiff got about 5 hours of sleep a night. He was able to groom and dress himself. (R. 44) He was not able to stand long enough to cook. A neighbor lady brought him meals. His daughter did all of the housekeeping (R. 45) Plaintiff did not have any pets. His daughter did the grocery shopping because he could not walk that long. (R. 46) He stayed in his house all the time, watching television. He had to lie down to let his back straighten out. He had once worn a back brace. Plaintiff had received cortisone injections but they did not help. (R. 47)

Plaintiff did not have any hobbies. He enjoyed being with his grandchildren but was not able to babysit them. (R. 48) He did not drink alcohol. He smoked a half pack of cigarettes a day. (R. 50) He showered twice a day. (R. 71) Plaintiff thought the biggest reason he could not work

7

was the skin lesions. They would open up and leak blood and pus out all over the place. (R. 51)

Plaintiff had been receiving medical treatment for the skin lesions since 1990. He had never heard of the medical term for these lesions, Hidradenitis Suppurativa. (R. 56) He had been having the lesions since he was born. The lesions became aggravated when he was about 13 years old. He had received surgery on his back in 1991 to try to stop the lesions. (R. 58) His brother and his grandson also had lesions. (R. 59)

Dr. Robert Sklaroff, an internist, testified that the Plaintiff's impairments did not meet or equal any Listing. (R. 54) He stated he was not able to diagnose the claimant with having Hidradenitis Suppurativa because of the location of his lesions. They were in areas which were under folds, which were moist and might not be cleansed, such as the axilla (underarm), perineum, the perineal area and groin. He believed that the claimant's skin infections were due to lack of hygiene. (R. 60) Dr. Sklaroff opined that Plaintiff's condition did not meet or equal any of the Listings or cause him to have any functional limitations. (R. 61) Dr. Sklaroff believed there was no medical reason for Plaintiff to use a cane. (R. 62) He had reviewed Dr. Clark's February 15, 2012 evaluation (R. 334-338) which diagnosed Plaintiff with having Hidradenitis Suppurativa. He disagreed with the treating physician's diagnosis because Dr. Sklaroff believed the condition was due simply to poor hygiene. (R. 63) Dr. Sklaroff did not cite any medical evidence to support his "lack of hygiene" theory. (R. 63-64) Nor does any of Plaintiff's treating physicians note a need for improved hygiene.

Dr. Sklaroff had never treated a patient with such a condition. (R. 64) He had never treated a patient with Hidradenitis Suppurativa. He believed the Plaintiff's problems would be cured if he was given antibiotics and told by his doctor to clean the lesions. (R. 64) Dr. Sklaroff

8

stated inconsistently that he "would send the patient to a specialist, but I would not have sent him to a specialist because he would not meet minimum criteria for that kind of referral. I would be laughed out of the room." (R. 65) He disbelieved Dr. Clark's diagnosis because the lesions would have to appear in non-crevice skin areas and be much more frequent and persistent. (R. 65) Dr. Sklaroff opined that proper diagnosis of the condition required more infections over "a lot more sites over a lot more period of time." (R. 66)

Dr. Don Olive, a psychologist, testified that Plaintiff's impairments did not meet or equal any Listing. (R. 54, 69) Plaintiff underwent a psychological evaluation in February, 2011 (R. 288-293). Plaintiff had a history of depression associated with his medical decline and a history of suicidal ideation. He was diagnosed with major depression with a GAF of 51. (R. 68) The state agency considered Listing 12.04 (depression) but determined Plaintiff had only moderate level impairments. (R. 69)

Dewey Franklin, a vocational expert, testified in response to the ALJ's hypothetical questions that the hypothetical person could not perform any of Plaintiff's past jobs. The Plaintiff's educational level would not allow for entrance into skilled work. (R. 73) Plaintiff did not have any transferrable skills. If it was assumed that the person was limited as testified to by Dr. Sklaroff and Dr. Olive, the person would be able to perform some jobs. (R. 74-75) Responding to Plaintiff's attorney's hypothetical questions, The VE testified that Plaintiff's problems with underarm lesions and groin lesions that leaked pus and blood could eliminate all jobs if the time it took the claimant to change his clothes and clean up took more than 10 percent of the workday. (R. 77)

In support of remand, the Plaintiff first argues that substantial evidence fails to support

9

the ALJ's determination that he was not disabled because his chronic hidradenitis suppurativa did not meet or equal Listing 8.06. In fact, the ALJ failed to cite or discuss Listing 8.06.

Listing 8.06 requires evidence proving the claimant had hidradenitis suppurativa with extensive skin lesions involving both axillae, both inguinal areas or the perineum that have persisted for at least 3 months despite continuing treatment as prescribed. Plaintiff argues that the medical treatment by Dr. Clark and the consultative evaluation by Dr. Gatewood prove every element in Listing 8.06. The Plaintiff argues that the fact that the ALJ never even mentioned Listing 8.06 requires remand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002), *Brindisi ex rel. Brindisi v. Barnhart,* 315 F.3d 783, 786 (7th Cir. 2003) and *Frazier v. Barnhart*, 2006 WL 3776378 (S.D. Ind. 2006).

> *Barnett v. Barnhart,* 381 F. 3d 664, 668 (7th Cir. 2004) stated:
>
> In considering whether a claimant's condition meets or
> equals a listed impairment, an ALJ must discuss the listing
> by name and offer more than a perfunctory analysis of the
> listing.

Likewise *Ribaudo v. Barnhart*, 458 F.3d 580, 583-584 (7th Cir. 2006), states:

> We agree with Ribaudo that the ALJ did not provide a
> sufficient analysis of the Step 3 question. What is troubling
> is that the ALJ, in addition to not mentioning listing 1.04A,
> did not evaluate any of the evidence on its required criteria
> that is favorable to Ribaudo. ... [H]is failure here to evaluate
> any of the evidence that potentially supported Ribaudo's claim
> does not provide much assurance that he adequately considered
> Ribaudo's case.

In the present case, it is undisputed that the ALJ's perfunctory consideration of the evidence failed to provide the detailed analysis required for Listing 8.06. *Moyer v. Astrue*, 2008 WL 313243 (S.D. Ind. 2008). Further, the ALJ rejected or ignored the treating and examining medical

evidence and relied instead on the non-treating, non-examining testimony by Dr. Sklaroff.

As it is undisputed that the ALJ failed to discuss Listing 8.06, which is directly applicable to Plaintiff's long-term condition, this matter must be remanded to the ALJ for proper consideration of this Listing.

Next, Plaintiff argues that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7p. Plaintiff contends that the ALJ arbitrarily and erroneously rejected the medical evaluations and treatment evidence cited above which proved the Plaintiff's combined impairments met or equaled Listing 8.06.

In *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), the Seventh Circuit reversed a decision denying benefits because the ALJ's credibility determination that the claimant's testimony was unsupported by the medical evidence was actually contrary to the medical evidence. *See also Zurawsky v. Halter,* 245 F.3d 881, 887-888 (7th Cir. 2001); *Steele v. Barnhart*, 290 F.3d 936, 941-942 (7th Cir. 2002); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-788 (7th Cir. 2003); *Golembiewski v. Barnhart*, 322 F.3d 912, 915-916 (7th Cir. 2003); *Carradine v. Barnhart*, 360 F.3d 751, 754-755 (7th Cir. 2004); *Inderanto v. Barnhart*, 374 F.3d 470 (7th Cir. 2004); and, *Barnett v. Barnhart,* 381 F.3d 664, 670 (7th Cir. 2004).

In the present case, as the case is being remanded for proper consideration of Listing 8.06, the court will also remand for a more thorough credibility determination.

Lastly, Plaintiff argues that substantial evidence fails to support the ALJ's Step Five determination that he was not disabled because he could perform some jobs. Remand is required where an ALJ fails to give full consideration to all of a claimant's documented impairments in determining that he is not disabled, *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004);

*Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir.2002); *Young v. Barnhart*, 362 F.3d 995, 1003-1004 (7th Cir. 2004); *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618-619 (7th Cir. 2010); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). Plaintiff herein claims that the ALJ's residual functional capacity assessment did not accurately describe the claimant's impairments. *Barrett v. Barnhart*, 355 F.3d 1065, 1068- 1069 (7th Cir. 2004).

Again, as this case is being remanded for the above reasons, the court will further remand for a clear determination of whether Plaintiff meets Listing 8.06, either due to his hidradenitis suppurativa, or due to combined impairments.

## Conclusion

On the basis of the foregoing, this case is hereby REMANDED to the Commissioner for proceedings consistent with this opinion.

Entered: March 9, 2015.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court